**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DANIEL HERNANDEZ, on behalf of himself and all others similarly situated, | : : : | Case No. 15-cv-11179 |
| *Plaintiff*, | : : | Assigned Judge: Hon. Joan B. Gottschall |
| v. | : : : | Designated Magistrate Judge: |
| MIDLAND CREDIT MANAGEMENT, INC., | : : | Hon. Mary Rowland |
| *Defendant*. | : : | JURY DEMANDED |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND <u>MEMORANDUM OF LAW IN SUPPORT THEREOF</u>**

Plaintiff Daniel Hernandez ("Plaintiff" or "Mr. Hernandez"), by counsel, hereby responds in opposition to Defendant Midland Credit Management, Inc.'s ("MCM") Motion to Dismiss for lack of subject matter jurisdiction.

### I.     INTRODUCTION

Defendant asserts in its Motion to Dismiss that Plaintiff allegedly lacks the Article III standing necessary to pursue his claims in federal court, and presumably should go to state court which has concurrent jurisdiction. 15 U.S.C. § 1692 k(d). *See* Dkt. No. 36. Defendant's nebulous standing argument misconstrues the injury-in-fact in this case and misreads the Supreme Court's recent decision in *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540 (2016). Plaintiff claims that he was deprived of valuable, statutorily-mandated information about how much money he allegedly owed. *Spokeo* reiterated existing principles of Constitutional standing, and reinforces the Article III standing of consumers such as Plaintiff who make claims under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. The High Court held that

intangible injuries can be "concrete," that "both history and the judgment of Congress play important roles" in determining whether an intangible injury is an injury in fact, and that Congress may "identify[] and elevat[e] intangible harms" to the status of legally cognizable injuries. *Id*. Both *Spokeo* itself and the majority of courts, both in this jurisdiction and beyond, to address standing following *Spokeo* have found that informational injury that results from failure to provide appropriate consumer disclosures is among the core injuries that Congress sought to prevent through the FDCPA. Plaintiff has thus plainly alleged an injury that is both concrete and particularized, and Defendant's challenge to standing must be rejected.

## II.    BACKGROUND

Plaintiff has made his theory of this case clear throughout his pleadings, briefs, discovery responses, and deposition testimony in this case. As he alleged in his complaint, the FDCPA requires debt collectors such as MCM to clearly state the amount of the debt that is allegedly due, so that the recipient is likely to understand it. *See* 15 U.S.C. § 1692g(a)(1); *see also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004); *Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996). Plaintiff specifically alleges that MCM failed to provide this required information when it sent him a form collection letter that sought to collect $1,266.53, plus an unspecified amount of court costs in connection with a pending collection lawsuit in Illinois state court. Compl., Dkt. No. 1 at ¶¶ 12-13. The letter misrepresented MCM's right to court costs, which under Illinois law could not possibly exist while the underlying collection lawsuit had not yet resulted in any judgment. *Id.* at ¶¶ 17-19. The letter furthermore did not state that the amount of the debt may vary from day to day because of, for example, interest, late charges or other charges. *Id.* at ¶ 16. It simply invited Plaintiff to call MCM and find out how much he actually has to pay.

The discovery taken to date reinforces the deceptive and incomplete nature of the information in MCM's letter. MCM's corporate representative testified that if a consumer such as Plaintiff called MCM after receiving the post-lawsuit collection letter, the actual amount owed would differ depending on the date, time, and identity of the MCM employee with whom the consumer happened to speak. Dkt. No. 34-4 at 85:11-87:8, 111:10-113:10. In fact, a consumer could be told one amount by one representative, and then immediately call back and be told an entirely different amount. *Id.*

Plaintiff reinforced in his written discovery responses and deposition testimony that his claim is based upon MCM's failure to provide sufficient and proper information to him about the actual amount being sought or its basis to collect court costs. *See* Dkt. No. 36-1 at p. 28 (Pl.'s Resp. to Def. Rogs. at No. 9 ("MCM's letter lacked detailed sufficient to inform him of what, if any, charges and/or costs it might seek from him.")). Plaintiff testified that his claim against MCM is based on lack of sufficient information:

> 14 Q. Okay. What is your understanding of your
> 15 claim against Midland Credit Management in this
> 16 case?
> 17 A. My understanding was that I received a
> 18 letter in the mail shortly after I was served, and
> 19 it was unclear to both me and Midland as to what the
> 20 exact amount of money that I owed was. And they had
> 21 mentioned the additional costs. And Midland doesn't
> 22 award additional costs, the judge does.

Transcript of Deposition of Plaintiff Daniel Hernandez ("Hernandez Dep.") at 156:14-22 (attached hereto as Exhibit A).

### III. ARGUMENT

#### A. Article III Standing

Standing to sue in federal court is a jurisdictional matter consisting of an "irreducible constitutional minimum" of three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

(1992). These are (1) injury in fact, "meaning a concrete and particularized invasion of a legally protected interest," (2) a causal connection between the injury and the conduct that is the subject of the complaint, and (3) redressability, meaning that the injury will be addressed by a favorable decision. *Id.* at 560-61. The question of standing is necessarily distinct from damages or the merits of Plaintiff's claim. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal.").

### B. FDCPA Statutory Purpose

Congress enacted the FDCPA in 1977, noting the "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors" and seeking to limit debt collectors to the use of methods which are not misleading. 15 U.S.C. § 1692(a). Because the FDCPA is remedial legislation, courts must construe its language broadly to effect its purpose. *Janetos v. Fulton Friedman & Gullace, LLP*, No. 12-cv-1473, 2013 WL 791325, at *5 (N.D. Ill. Mar. 4, 2013) (citing *Brown v. Card Serv. Ctr.*, 464 F.3d 450, 453 (3d Cir. 2006) and *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1171 (9th Cir. 2006)). Congress specifically sought to eliminate specific abusive practices it identified as particularly harmful to consumers, including the use of "false, deceptive, or misleading representation[s] or means in connection with the collection of any debt." 15 U.S.C. § 1692e; *Bernal v. NRA Grp., LLC*, No. 16-cv-1904, 2016 WL 4530321, at *1 (N.D. Ill. Aug. 30, 2016). Debtors are entitled to all of the rights and protections afforded by the FDCPA, regardless of whether they owe the debt in question or have suffered any actual damages. *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998).

### C. The *Spokeo* Decision Did Not Change the Law on Article III Standing

The Supreme Court issued its opinion in *Spokeo, Inc. v. Robins* on May 16, 2016, vacating and remanding the case to the Court of Appeals for the Ninth Circuit for further proceedings. ___

U.S. ___, 136 S. Ct. 1540 (2016). This decision did nothing to change the law on Article III standing, but merely reaffirmed existing law. The Supreme Court's ruling in *Spokeo* confirmed that a litigant must demonstrate that it has suffered "'an invasion of a legally protected interest that is concrete and particularized . . . .'" *Spokeo*, 136 S. Ct. at 1548 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)). *Spokeo* confirmed that the violation of statutory procedures designed to protect a statutorily granted right "can be sufficient in some circumstances to constitute injury in fact" without demonstrating more. *Id.* at 1549-50.

Elaborating on the meaning of concreteness, the Court in *Spokeo* distilled several "general principles" from its prior cases, without going beyond those cases. *Id.* at 1550. First, it acknowledged that, although tangible injuries (like physical or economic harm) are "perhaps easier to recognize" as concrete injuries, "intangible injuries can nevertheless be concrete," as can injuries based on a "risk of harm." *Id.* at 1549-50. Second, "[i]n determining whether an intangible harm constitutes injury in fact, both history and the judgment of Congress play important roles." *Id.* at 1549. So if the "alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts"—or, put in fewer words, if "the common law permitted suit" in analogous circumstances—the plaintiff will have suffered a concrete injury that can be redressed by a federal court. *Id.* at 1549-50; *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) (explaining that Article III encompasses "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process").

In fact, a plaintiff need not dig up a common-law analogue to establish a concrete injury, because Congress has the power (and in fact is "well positioned") "to identify intangible harms that meet minimum Article III requirements," even if those harms "were previously inadequate in law." *Spokeo*, 136 S. Ct. at 1549. *Spokeo* emphasized that Congress can elevate even procedural rights to

a concrete injury if they protect against an identified harm. Of course, "a bare procedural violation, divorced from any concrete harm" identified by Congress, will not give rise to an Article III injury. *Id.* at 1549. But a "person who has been accorded a procedural right to protect his concrete interests" has standing to assert that right, and may do so "without meeting all the normal standards for redressability and immediacy." *Lujan*, 504 U.S. at 572 n.7.

Both commentators and courts have recognized that none of the principles set forth in *Spokeo* are new. *In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 273 (3d Cir. 2016) (noting that *Spokeo* did not change Article III standing analysis); *Thomas v. FTS USA, LLC*, ___ F. Supp. 3d ___, 2016 WL 3653878, at *5 (E.D. Va. June 20, 3016) (in Fair Credit Reporting Act disclosure case, finding that "*Spokeo* did not change the basic requirements of standing."). *See also*, Amy Howe, *Opinion analysis: Case on standing and concrete harm returns to the Ninth Circuit, at least for now*, SCOTUSblog (May 16, 2016), available at http://bit.ly/1TB3vd1 (describing *Spokeo* as a "narrow" decision); Daniel J. Solove, Spokeo, Inc. v. Robins*: When Is a Person Harmed by a Privacy Violation?*, Geo. Wash. L. Rev. On the Docket (May 19, 2016), available at http://bit.ly/20fyAmS. *Spokeo* did not even apply these principles to the facts before it, choosing instead to remand the case to the Ninth Circuit, whose previous analysis was "incomplete" because it had "overlooked" concreteness. 136 S. Ct. at 1545. The Court, in other words, offered no assessment of the Ninth Circuit's analysis below, aside from its determination that the Ninth Circuit had failed to analyze concreteness as a separate step in the injury-in-fact inquiry.

MCM nonetheless claims that *Spokeo* broke new ground. Dkt. No. 36 at pp. 7-8. As explained above, however, the Court did nothing of the sort. That a "bare procedural violation, divorced from any concrete harm" is not enough to confer standing was and remains a well-established principle of Article III standing. *Spokeo*, 136 S. Ct. at 1549 (quoting *Summers v. Earth*

*Island Institute*, 555 U.S. 488, 497 (2009) ("[T]he requirement of injury in fact is a hard floor of Article III jurisdiction that cannot be removed by statute."). Thus, despite MCM's efforts to exaggerate the decision's importance, *Spokeo* has done nothing to change (or even clarify) the law; it simply summarizes the doctrine and provides examples of injuries that might (or might not) constitute sufficiently concrete harm. *Spokeo* therefore should not alter the Court's analysis of this case.

### D. Plaintiff Suffered Informational Injury As A Result of MCM's Failure to Clearly State the Amount of the Debt In Its Post-Litigation Collection Letter

The Supreme Court in *Spokeo* explicitly recognized that denial of access to information mandated to be available is a concrete harm giving rise to Article III standing. *Spokeo*, 136 S. Ct. at 1549 (citing *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 20-25 (1998) (that "'inability to obtain information'" that Congress mandated to be disclosed is a concrete injury) and *Public Citizen v. Dep't of Justice*, 491 U.S. 440, 449 (1989) (finding that failure to disclose information under Federal Advisory Committee Act is an injury conferring standing)). This principle has been repeatedly reaffirmed by other courts following *Spokeo*. *Church v. Accretive Health, Inc.*, ___ Fed. App'x ___, 2016 WL 3611543, at *2-3 & n.2 (11th Cir. July 6, 2016) (citing *Spokeo* and finding that receiving mandated disclosures is a substantive right, the denial of which gives rise to standing); *Larson v. Trans Union, LLC*, ___F. Supp. 3d ___, 2016 WL 4367253, at *3 (N.D. Cal. Aug. 11, 2016) (unclear and incomplete disclosure of information mandated by statute to be provided to consumers is an informational injury sufficient to support Article III standing).

The decision of the Eleventh Circuit in the *Church v. Accretive Health* case is particularly instructive here. The *Church* plaintiff asserted that the defendant failed to include required disclosures in a collection letter, but did not allege any actual damages, simply asserting that she was upset by the letter. 2016 WL 3611543, at *1. The court discussed the *Spokeo* decision in

detail, as well as other Supreme Court precedents establishing that the violation of a Congressionally-created right to truthful and clear disclosures is a concrete harm. *Id.* at *3 (discussing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368, 373-74 (1982) (housing "tester" who had no intention of renting an apartment, and whose only claim was for provision of false information in violation of Fair Housing Act, satisfied Article III injury-in-fact requirement)). The *Church* court concluded that the FDCPA created similar substantive rights:

> The FDCPA creates a private right of action, which Church seeks to enforce. The Act requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication. *See* 15 U.S.C. § 1692e(11); 1692g(a)(1)—(5). The FDCPA authorizes an aggrieved debtor to file suit for a debt collector's failure to comply with the Act. *See* 15 U.S.C. § 1692k(a) ("[A]ny debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person....") Thus, through the FDCPA, Congress has created a new right—the right to receive the required disclosures in communications governed by the FDCPA—and a new injury—not receiving such disclosures . . . . Church has alleged that the FDCPA governs the letter at issue, and thus, alleges she had a right to receive the FDCPA-required disclosures. Thus, Church has sufficiently alleged that she has sustained a concrete—*i.e.*, "real"—injury because she did not receive the allegedly required disclosures. <u>The invasion of Church's right to receive the disclosures is not hypothetical or uncertain; Church did not receive information to which she alleges she was entitled.</u> While this injury may not have resulted in tangible economic or physical harm that courts often expect, the Supreme Court has made clear an injury need not be tangible to be concrete. *See Spokeo, Inc.*, 578 U.S. at ——, 136 S.Ct. at 1549; *Havens Realty Corp.*, 455 U.S. at 373, 102 S.Ct. 1114. Rather, this injury is one that Congress has elevated to the status of a legally cognizable injury through the FDCPA. Accordingly, Church has sufficiently alleged that she suffered a concrete injury, and thus, satisfies the injury-in-fact requirement

*Id.* (emphasis added). Courts within this district have followed the reasoning of *Church* and come to the same conclusion – that an allegedly incomplete and misleading disclosure in a collection letter is an intangible but nonetheless concrete injury giving rise to Article III standing. *Bernal v. NRA Grp., LLC*, No. 16-cv-1904, 2016 WL 4530321, at *5 (N.D. Ill. Aug. 30, 2016) (harm suffered from receiving a debt collection letter containing an alleged unlawful demand is concrete)

(citing *Spokeo, Church*, and *Keele v. Wexler*, 149 F.3d. 589, 593-94) (7th Cir. 1998));[1] *Quinn v. Specialized Loan Servicing, LLC*, No. 16-cv-2021, 2016 WL 4264967, at *4-5 (N.D. Ill. Aug. 11, 2016) (claim under FDCPA for use of misleading representations in debt collection represents concrete informational injury); *Lane v. Bayview Loan Servicing, LLC*, No. , 2016 WL 3671467, at *4-5 (N.D. Ill. July 11, 2016).

Defendant seeks to avoid application of these precedents by asserting without explanation that "the right to information is not at issue in this case." Dkt. No. 36 at p. 10 n.4. On the contrary, Plaintiff's right to receive truthful and clear information as part of debt collection notices goes to the heart of the FDCPA's purpose of protecting consumers against abusive debt collection practices. *Jerman*, 559 U.S. at 577 (FDCPA is intended to eliminate abusive debt collection practices by, among other things, prohibiting false representations about debts); *Bentrud*, 794 F.3d at 874 (Congress passed the FDCPA to eliminate the many evils associated with debt collection" including making "false or misleading representations").[2] *See also Larson v. Trans Union, LLC*, 2016 WL 4367253, at *3 (incomplete and unclear information provided pursuant to disclosure requirements of Fair Credit Reporting Act gives rise to constitutional standing). Plaintiff here

---

[1] In light of Plaintiff's pending motion for class certification, it is worth noting that the *Bernal* court found class certification appropriate, over the defendant's injury-based objections. 2016 WL 4530321, at *9-10.

[2] The sole FDCPA case MCM cites in support of its motion is neither binding nor persuasive authority. *Tourgeman v. Collins Fin. Servs., Inc.*, ___ F. Supp. 3d ___, 2016 WL 3919633, at *2 (S.D. Cal. 2016). Citation to a single California district court (which will likely be overturned in light of *Spokeo*'s clear holding that a "risk of harm" is sufficient to create injury in fact, 136 S. Ct. at 1549-50) is insufficient to overcome the substantial weight of authority from within this district that plaintiffs bringing FDCPA disclosure claims have standing to sue in federal court. The remaining cases MCM cites have no relevance whatsoever to this case, as they deal with entirely different types of harm.

alleges that he was entitled to receive certain clearly stated and truthful information from MCM – namely, the amount of the debt – and that MCM failed to provide it. Compl., Dkt. No. 1 at ¶¶ 16, 21. This is exactly the sort of informational injury recognized as both concrete and particularized by *Spokeo*, as well as the cases that followed including *Church* and *Bernal*.[3]

MCM cites to a few lines from Plaintiff's deposition testimony where he answers questions in the negative about whether he was "personally . . . injured." But FDCPA lawsuits are not like car accident or other "personal injury" cases. FDCPA plaintiffs are rarely injured in that physical sense. Nor is financial injury necessary for with an FDCPA claim to success or for a plaintiff to have Article III standing. *See Keele*, 149 F.3d at 593 ("the [FDCPA is blind when it comes to distinguishing between plaintiffs who have suffered actual damages and those who have not."); *Matmanivong v. Nat'l Creditors Connection, Inc.*, 79 F. Supp. 3d 864, 870 (N.D. Ill. 2015) (noting that a consumer need not even read a collection letter in order to be entitled to FDCPA statutory damages); (*Nokes v. Cavalry Firm*, No. 15-cv-3354, 2016 WL 4126143, at *3 (C.D. Ill. Aug. 3, 2016) (post-*Spokeo*, affirming *Keele* holding that "[p]roof of actual damages is not required in order to recover [FDCPA] statutory damages."). Moreover, the informational injury in this case is not, as defense counsel's deposition questions imply, a result of "receiving the letter." The informational injury stems from the fact that, despite the FDCPA's mandate that debt collectors provide clear and complete disclosure of the amount of a debt, the *contents of MCM's letter fails to include this clear information* and left Plaintiff wondering how much money exactly he allegedly owes.

---

[3] MCM's attempts to justify the language in its collection letter, including asserting that the language is "demonstrably true," (Dkt. No. 36 a p. 11) or that its misrepresentations are allegedly not "material" (Dkt. No. 36 at p. 13) are merits arguments that have nothing to do with Plaintiff's standing to bring his claims. *Warth v. Seldin*, 422 U.S. 490 at 500.

Mr. Hernandez's actual claim of injury-in-fact is set forth in his interrogatory responses, where plaintiff stated that "MCM's letter lacked detail sufficient to inform him of what, if any, charges or costs it might seek from him." Dkt. No. 36-1 at p 28. Further, Mr. Hernandez explained at his deposition that it was MCM's failure to disclose the details of the costs it might be seeking from him, including how it was possible for MCM, rather than the judge in the collection case, to determine that costs were owed, that made the operative collection letter unclear. Hernandez Dep. at 156:14-22 ("it was unclear to both me and Midland as to what the exact amount of money that I owed was. And they had mentioned the additional costs. And Midland doesn't award additional costs, the judge does.").

This lack of clear information is the Article III injury-in-fact alleged in this case, and the fact that Defendant claims that some other physical or financial injury did not occur is of no moment. Indeed, Defendant's implied argument that actual *damages* are necessary in order for Plaintiff to have standing flies in the face of long-standing and binding FDCPA authority,[4] and fundamentally misunderstands the holding in *Spokeo* that intangible harms, including informational injuries, can be concrete. 136 S. Ct. at 1549-50. There can be no question here that Plaintiff has stated a concrete informational injury establishing Article III standing.

---

[4] *See Keele*, 149 F.3d at 593; *Matmanivong*, 79 F. Supp. 3d at 870; *Nokea*, 2016 WL 4126143, at *3.

## IV. CONCLUSION

For all the reasons discussed herein, Plaintiff submits that Defendant's Motion to Dismiss must be denied and this matter should remain in federal court.

Respectfully submitted,

Date: October 14, 2016

**FRANCIS & MAILMAN, P.C.,**

BY: */s/John Soumilas*
JOHN SOUMILAS (admitted *pro hac vice*)
Land Title Building, 19th Floor
100 South Broad Street
Philadelphia, PA 19110
Tel.: (215) 735-8600
Fax: (215) 940-8000
jsoumilas@consumerlawfirm.com

ROGER ZAMPARO, JR.
**ZAMPARO LAW GROUP, P.C.**
2300 Barrington Road, Suite 140
Hoffman Estates, IL 60169
Tel.: (224) 875-3202
Fax: (312) 276-4950
roger@zamparo.com

*Attorneys for Plaintiff and the Classes*

-13-

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants.

Date: October 14, 2016

                                          */s/John Soumilas*
                                          JOHN SOUMILAS

Case: 1:15-cv-11179 Document #: 39 Filed: 10/14/16 Page 13 of 13 PageID #:652